IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



FILED
JUL -2 2010
CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rels. MELAN DAVIS, et al.,<br>Plaintiff,<br><br>v.<br><br>ERIK PRINCE, et al.,<br>Defendants. | No. 1:08cv1244 |

## ORDER

This False Claims Act matter is before the Court on the defendants' motion to dismiss the amended complaint in this case pursuant to Rules 9(b) and 12(b)(6), Fed. R. Civ. P. The motion, having been fully briefed and argued, is ripe for disposition. This Order memorializes the bench ruling granting in part and denying in part the motion to dismiss.

### I.

Defendants in this matter are (i) Erik Prince, who is allegedly the sole owner of the entity defendants, which defendants are (ii) Blackwater Security Consulting LLC, (iii) Xe Services LLC, (iv) U.S. Training Center, Inc. (collectively "Blackwater defendants"), (v) Greystone Limited, and (vi) The Prince Group LLC. Blackwater defendants are government contractors who provide security to government agencies, among other services.

Relators, Melan Davis and Brad Davis, are former employees of one or more Blackwater defendants. In Count 1 of their two-count complaint, relators allege that defendants are liable under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, for fraudulent misrepresentations they allegedly made in the course of performing their obligations under two government contracts. Relators allege that they learned of these fraudulent misrepresentations during and in the course

of their employment with Blackwater defendants.

A. Hurricane Katrina Contract

Relators first allege that defendants are liable for fraudulent misrepresentations they made in connection with a contract with the U.S. Department of Homeland Security ("DHS") awarded to defendant Blackwater Security Consulting LLC ("Blackwater Security") to provide security services in Louisiana after Hurricane Katrina. The relators' complaint alleges that an accurate report of actual costs was critical to the amount that Blackwater Security would ultimately be paid.

Relators allege that Blackwater defendants—including six named Blackwater managers who were employed either by Blackwater Security or by another Blackwater defendant entity—provided the personnel employed on a GSA Form 139 each month, and the government made its payments in reliance on the accuracy of the contents of the Form 139. Relators allege that Blackwater defendants "intentionally and knowingly submitted materially false claims" on the Form 139s. Specifically, relators allege that in the monthly Form 139 submissions between October 2005 and July 2006, Blackwater defendants overstated their legitimate expenses on this form. They allegedly (i) "forged and falsified to inflate hours worked and the number of employees," (ii) "claimed costs for payments to strippers, bar tabs, spa trips, protein shakes, weight-training supplements, haircuts, and gym memberships," and (iii) impermissibly double-charged the government for certain costs.

Separately, relators allege that Blackwater defendants "willfully and intentionally failed to perform a material term of the contract," namely monitoring and registering the weaponry

given to its employees and, more specifically, not hiring and issuing firearms to known felons. As a result, relators allege, "Blackwater's performance of services was so deficient that for all practical purposes it was the equivalent of no performance" and thus, Blackwater defendants' invoices fraudulently represented that unperformed contractual services were, in fact, performed.

B. Iraq and Afghanistan State Department Contract

Relators also allege that the three Blackwater defendants had a contract with the State Department to provide security services in Iraq and Afghanistan and operate a program management office in Washington, D.C. Relators allege that Blackwater defendants, through twelve named Blackwater managers, knowingly and intentionally submitted "musters" and "expense reports" on a monthly basis that documented more employees than were actually employed and more expenses than were actually incurred. Relators further allege that Blackwater defendants transferred funds to defendant Greystone Limited, and reflected these payments as a reimbursable management fee paid to unrelated parties. Additionally, relators allege that Blackwater defendants used a software program to create the false appearance that Blackwater defendants were using the services of a third party travel agent company, Carlson Wagonlit, and submitted expenses to the government on this basis. Relators further allege that the government relied on all of these submissions in calculating the amount of payments owed defendants.

Separately, relators allege that Blackwater defendants willfully and intentionally failed to perform a material term of the contract, namely "ensuring its employees abided by the contract term governing the deadly use of force." Relators claim that this nonperformance was the

"equivalent of no performance" whatever on the contract.

C. Wrongful Termination

Separately, in Count 2, relators allege that defendants wrongfully terminated Melan Davis for "seeking to rectify the abuses occurring" in defendants' Jordan offices. Importantly, the retaliation claim does not allege that Ms. Davis engaged in any protected conduct under the FCA.

## II.

### A.

To plead a False Claims Act false statement with particularity as required by Rule 9(b), the Fourth Circuit has held that "an FCA plaintiff must, at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *U.S. ex rel Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370 (4th Cir. 2008) (quoting Harrison, 176 F.3d at 784).

Defendants allege that relators have not pled their FCA claims with particularity. First, defendants argue that relators do not identify a single false claim or tie any of the alleged schemes to a false claim. While this is true with respect to some of the allegations in Count 1, it is clear that other allegations are pled with sufficient particularity to clear Rule 9(b)'s threshold hurdle. It is adequate that relators allege that the false statements were made on the monthly basis during the given time range. Simply put, relators' identification of the specific monthly expense reports during a specific time range, their reasonably specific explanation of the manner in which these reports were fraudulent, and their identification of the specific individuals who allegedly engaged in this fraudulent conduct, is adequately specific. It appears that defendants

would require relators to produce actual copies of these expense reports, but such evidence—while perhaps necessary at the summary judgment stage—is not required at the threshold.

Defendants' reliance on *U.S. ex rel. Godfrey v. KBR, Inc.*, 360 F. App'x. 407 (4th Cir. 2010), is misplaced. In *Godfrey*, the relator alleged that invoices for meals served to armed forces were based on an inflated head count. But the relator failed to allege that the contract required that the invoice be based on an actual headcount. Accordingly, no false statement was alleged. In contrast, in this complaint, relators go to pains to indicate that the amount owed to defendants under the contracts was tied specifically to the actual costs incurred by defendants and to the actual headcounts. Thus, *Godfrey*'s hurdle is cleared by these relators.

And, further, with respect to the 12(b)(6) motion, these allegations also clear *Iqbal* and *Twombly*'s plausibility hurdle with room to spare on allegations of violations of § 3729(a)(1) and (a)(2). The elements of a False Claims Act false statements claim are: (i) a false representation or fraudulent course of conduct, (ii) made or carried out with knowledge of the falsehood, (iii) that was material, and (iv) that caused the government to pay out money. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999). Simply put, relators' allegations of overcharging on these two contracts are adequate to create a plausible inference that all of the elements of an FCA claim are satisfied.

Nonetheless, for two reasons, relators' "worthless services" allegations regarding (i) allowing disqualified persons to carry firearms in Louisiana and (ii) improper use of deadly force in Iraq and Afghanistan do not adequately plead a fraud claim pursuant to Rule 9(b). First, they

do not adequately demonstrate an "objective falsehood," but instead they "amount to nothing more than a claim that [defendants] breached the terms of their contracts." *Godfrey*, 360 F. App'x at 412; *see Wilson*, 525 F.3d at 377 ("While the phrase 'false or fraudulent claim' in the False Claims Act should be construed broadly, it just as surely cannot be construed to include a run-of-the-mill breach of contract action that is devoid of any objective falsehood."). Put another way, the complaint does not identify an objectively false statement made by plaintiffs with respect to performance of the contract. And second, not unrelatedly, unlike the allegations of overcharging, the firearms and deadly force allegations do *not* adequately explain "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby," *Wilson*, 525 F.3d. Accordingly, claims arising from these two allegations—including the § 3729(a)(7) "reverse false claim" claim—are appropriately dismissed. Nonetheless, during oral argument, relators' counsel represented that there is a good-faith basis to re-plead this allegation in a manner that satisfies Rules 9(b) and 12(b)(6). Accordingly, provided that they can do so consistent with Rule 11, Fed. R. Civ. P., relators may re-plead these allegations.

Next, defendants argue that relators impermissibly lump together three separate corporate entities as "Blackwater" without adequately explaining which of these entities had the subject contracts and perpetrated the fraud. To the contrary, the complaint alleges which entities were parties to the State Department contract, and it further names the specific managers, allegedly employed by all three Blackwater defendants, who collaborated to engage in the alleged fraudulent activity. Whether or not this allegation is true is a matter for summary judgment that

is neither reached nor decided here. All that is decided here is that these allegations are adequate under Rules 9(b) and 12(b)(6).

It is true, however, that relators allege no fraudulent conduct by defendants Erik Prince and The Prince Group, LLC, except merely that "reasonable discovery will show" that they received proceeds from the fraudulent conduct. Put differently, the complaint as currently pled does not demonstrate, as required, that relators have "substantial prediscovery evidence" of these defendants' involvement in the alleged fraudulent scheme. *Harrison*, 176 F.3d at 788. Thus, as this claim does not state with particularity a valid fraud claim against defendants Prince and Prince Group LLC, they are appropriately dismissed from this action. Relators may re-plead their claim with respect to these defendants if they believe that they can do so consistently with Rule 11, Fed. R. Civ. P.

B.

Count 2, the retaliatory discharge claim, must be dismissed pursuant to Rule 12(b)(6). To plead an FCA retaliation claim, relators must allege (i) that relator took acts in furtherance of a qui tam suit, (ii) the employer knew of these acts, and (iii) the employer discharged the relator as a result of these acts. *Eberhardt v. Integrated Design & Constr. Inc.*, 167 F.3d 861, 866 (4th Cir. 1999). Simply put, the complaint's factual allegations do not create a plausible inference that any of these elements are satisfied. The full extent of factual allegations on the retaliation claim are that "[d]efendants wrongfully terminated Melan Davis for seeking to rectify the abuses occurring in the Jordan offices." Ms. Davis's statement, attached to the complaint, merely describes that she "questioned" supervisors and "was concerned" about billing practices. This

does not allege that she actually engaged in any FCA protected conduct, and if she did, that her employer knew of this conduct. Thus, Count 2 reads as nothing more than a "threadbare recital" of the elements of an FCA retaliation claim. *Iqbal*, 129 S. Ct. at 1950. Accordingly, Count 2 is properly dismissed, but relators may re-plead this claim if they can do so consistently with Rule 11.

Accordingly, and for good cause,

It is hereby **ORDERED** that defendants' motion to dismiss the amended complaint is **GRANTED IN PART** as follows:

(i) Count 1 is **DISMISSED** with respect to allegations that defendants employed individuals who were legally disqualified from carrying firearms;

(ii) Count 1 is **DISMISSED** with respect to allegations that defendants employed individuals who disobeyed use of deadly force requirements and subsequently concealed that activity;

(iii) Count 1 is **DISMISSED** insofar as it alleges violations of FCA § 3729(a)(7);

(iv) Count 2 is **DISMISSED** in its entirety; and

(v) Defendants Erik Prince and The Prince Group, LLC are **DISMISSED** from this case.

It is further **ORDERED** that defendants' motion to dismiss is **DENIED IN ALL OTHER RESPECTS**.

It is further **ORDERED** that relators are **DIRECTED** to file any motion to amend the complaint, accompanied by (i) a memorandum of law and (ii) a proposed amended complaint, by 5:00 p.m., Wednesday, July 14, 2010.

It is further **ORDERED** that defendants are **DIRECTED** to file any opposition to relators' motion to amend by 5:00 p.m., Wednesday, July 21, 2010.

The Clerk is directed to send a copy of this Order to all counsel of record.

Alexandria, Virginia
July 2, 2010

/s/
T. S. Ellis, III
**United States District Judge**