## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA ex rel. ) | **JURY DEMAND** |
| MELAN DAVIS and BRAD DAVIS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No.1:08-cv-1244-TSE-TRJ |
| v. ) | |
| ) | |
| ERIK PRINCE, et al., ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY BLACKWATER DEFENDANTS AND DEFENDANT GREYSTONE

Pursuant to Local Rule 37(A) and Federal Rule of Civil Procedure 37, Relators respectfully file this Memorandum in Support of their Motion requesting that the Court order Defendants Blackwater Security Consulting, LLC, Xe Services LLC, and U.S. Training Center ("Blackwater Defendants") and Defendant Greystone LTD ("Defendant Greystone") to produce documents requested by Relators in their First Set of Document Requests Directed to Blackwater Defendants and Defendant Greystone, respectively, ("Document Requests" or "Requests") served on August 13, 2010.

## INTRODUCTION

To date, Defendants have failed to produce a large number of relevant documents requested by Relators, have made invalid objections and responses to Relators' Document Requests, and have failed to inform Relators when their production will be complete. Defendants' delay tactics are prejuicing Relators' ability to prepare expert reports, conduct depositions, and otherwise prepare for trial in a timely fashion.

Defendants have flatly refused to produce entire categories of documents that are highly relevant to the Relators' allegations of fraud.  For example, Defendants have refused to produce any financial documents other than the actual invoices submitted to the government and the supporting documentation — all of which Relators allege was falsified.  Without any other financial documents as points of comparison, Relators will be unfairly hampered in their ability to piece together the rest of the fraud puzzle.

Even for those Requests that Defendants concede seek relevant documents, Defendants have improperly restricted and limited the scope of their production.  They have subjected all of their Responses to broad objections on the basis of relevance or overbreadth and have agreed to produce only what they themselves deem to be relevant.  These qualified responses enable Defendants to cherry-pick and produce only the documents that support their case.

Relators seek to compel unqualified and complete responses to their Requests.

## SUMMARY OF CLAIMS

Relators allege that Defendants defrauded the government and violated the False Claims Act in connection with their Hurricane Katrina and Iraq and Afghanistan contracts in three ways. **First**, Relators allege that Blackwater Defendants falsified documents to inflate the amount of personnel costs.  *SAC ¶¶19, 27.*  To inflate personnel costs Defendants falsified musters in Iraq and Afghanistan by charging the government for more personnel than were actually on the ground.  *SAC ¶27.*  Defendants also falsified travel documents to cover up the fraud.  *SAC ¶31.* Blackwater Defendants similarly overcharged the government for personnel on the Hurricane Katrina contract by falsifying the documents that recorded the amount of hours worked and charging the government for hours not actually worked.  *SAC ¶19.*  **Second**, Relators allege that Blackwater Defendants falsified documents to inflate the amount of reimbursable expenses.  *SAC*

¶¶*20, 28-32*.  In Iraq and Afghanistan, Blackwater Defendants transferred money to wholly-owned subsidiaries, Defendant Greystone and Presidential Airways, to make it appear that Blackwater Defendants were incurring legitimate expenses to third-party vendors, and then charged the government for those expenses.  *SAC ¶29*.  Defendants also falsified travel documentation and conspired with third parties to create false invoices for other expenses.  *SAC* ¶¶*30-32*.  To inflate reimbursable expenses on the Hurricane Katrina contract, Blackwater Defendants created false accounting records, paid employees for expenses not incurred, and overpaid vendors.  *SAC ¶20*.  **Third**, Relators allege that Defendants knowingly charged the government for worthless services.  *SAC* ¶¶*21, 33-48*.  Blackwater Defendants billed the government for worthless services under the Hurricane Katrina contract by failing to manage personnel and giving weapons to felons and others who were unauthorized to carry weapons.  *SAC ¶21*.  In Iraq and Afghanistan, Defendants deployed personnel who were known to be violent and under the influence of drugs such as steroids.  *SAC ¶39*.  Defendants also retained personnel who engaged in drug use, committed acts of excessive violence, and engaged in illegal arms dealing.  *SAC* ¶¶*40-43*.  Defendants facilitated this fraud on the government in part by destroying and falsifying documents.  *SAC* ¶¶*45-46*.  In each type of fraud, Defendants falsified documents including, among other things, musters and other time records, invoices and supporting documentation such as travel itineraries, and drug testing.

## PROCEDURAL HISTORY

On February 2, 2010, Relators served their initial Complaint on Defendants, and on April 14, 2010, Relators filed their First Amended Complaint.   On the same day and based upon the agreement of the parties, Relators and Defendants filed a consent motion to stay discovery until after a hearing on Defendants' Motion to Dismiss the First Amended Complaint.  The Court

dismissed the complaint in part on July 2, 2010, but allowed Relators the opportunity to amend. Accordingly, Relators filed their Second Amended Complaint on July 26, 2010.  On August 6, 2010, Defendants moved to dismiss the Second Amended Complaint and moved to stay all discovery by Relators until "a hearing date 75 days from the decision" on their motion to dismiss.  This motion to stay violated the parties' prior agreement to seek a single consent motion without further stays of discovery.

On August 13, 2010, Relators served the first set of Document Requests on Blackwater Defendants and Defendant Greystone.   On August 27, 2010, this Court granted Defendants' motion to stay merits discovery for a thirty-day period ending on September 27, 2010.  On September 30, 2010, Blackwater Defendants and Defendant Greystone filed their objections to Relators' Document Requests and objected to every document request.  Soon thereafter Relators initiated the meet-and-confer process, as required by Local Rule 37(E).

Defendants were scheduled to produce documents on October 8 and 13, 2010, but asked for an extension until October 20, to which Relators agreed.  On October 20, Relators received a cover letter to Defendants' production and learned for the first time that Defendants were producing documents on a rolling basis.  Relators did not receive Defendants' Responses and first production of 75,000 pages of documents until the afternoon of October 21.  In their Responses, Blackwater Defendants purported to produce documents responsive to Document Request Nos. 7 (invoices), 10 (travel expenditures), 12 (documents provided to government auditors), 13 (communications with Iraqi and Afghani governments), 14 (documents provided to Congress), 15 (recruitment), 16 (use of drug and alcohol), 17 (supervision, including drug testing), 18 (investigations of excessive force), 19 (investigations of injury), and 20 ("Do not

Use" lists).[1]  Defendant Greystone purported to produce documents responsive to Document

Request Nos. 5 (intra-company contracts), 7 (documents provided to government auditors), 9

(documents provided to Congress), and 10 (providing services to State Department and

Department of Homeland Security).[2]

On October 22, the parties met and conferred in an attempt to resolve the numerous

remaining discovery disputes.  During that call, Defendants reiterated their refusal to produce

any financial documents.  In response to Relators' suggestion that Defendants were better

positioned to determine what production of financial documents would be feasible, counsel for

Defendants informed Relators that he lacked any information on how Defendants maintain their

financial records and could not propose or discuss in any meaningful way production of financial

documents.  Relators sent a letter memorializing this meet-and-confer and stressing again their

need for financial documents on October 26.  In this letter Relators provided an itemized list of

some of the business records they believe are responsive to their request for financial documents.

On October 29, Defendants responded that their second installment of production would

occur on November 5 and that subject to four limited exceptions they stood by their refusals to

produce all financial documents as outlined in their objections.  Relators responded the same

day, objecting to Defendants' rolling production and again explaining Relators' need for the

requested documents that Defendants refused to produce.  On November 1, Relators again wrote

Defendants and described the significant deficiencies in Defendants' first production, including

the fact that no documents were produced in response to at least six requests for which

Defendants had agreed to produce.[3]  Defendants made their second production, consisting of

---

[1] A copy of Blackwater Defendants' Responses is attached as Exhibit A.
[2] A copy of Defendant Greystone's Responses is attached as Exhibit B.
[3] A copy of the four meet-and-confer letters is attached as Exhibit C.

10,800 pages of documents, on November 8 and their third production, consisting of 8,800 pages of documents, on November 10.  Defendants have yet to inform Relators when they expect their rolling production to be complete, and they have failed to inform Relators what or how many documents will be produced on any particular date.  Relators' expert reports are currently due on December 6, 2010, and discovery closes on January 14, 2011.

Following the meet-and-confers, the Blackwater Defendants still refuse to produce any documents responsive to Request Nos. 3 (intracompany fund transfers), 4 (analysis of profitability of providing services to State Department), 9 (financial records, such as payroll reports), 11 (weapons records), 22 (documents authored or received by a subset of personnel identified by name) and 23 (internal investigations).   Defendant Greystone continues to refuse to produce any documents responsive to Requests No. 3 (relationship between Greystone and Blackwater), 4 (monthly profit and loss statements), 6 (financial records, such as payroll reports), 11 (documents authored or received by a subset of personnel identified by name), and 12 (pertaining to internal investigations).

Defendants have not provided any privilege log or any other document justifying the withholding of responsive documents.  To date, Blackwater Defendants have failed to produce entire categories of responsive documents and have produced very few documents from categories that Defendants concede are relevant and responsive.  Blackwater Defendants have not produced the following critical categories of documents:

- Blackwater Defendants have failed to produce a majority of the invoices for personnel costs submitted to the State Department for the years 2005 and 2006 responsive to Document Request No. 7.
- Blackwater Defendants have failed to produce a majority of the invoices for travel costs submitted to the State Department for the years 2005 and 2006 responsive to Document Request No. 10.

- Blackwater Defendants have failed to produce DD215s, resumes, biographies, or other materials obtained from persons being recruited to deploy under the WPPS and Homeland Security contracts responsive to Document Request No. 15.

- Blackwater Defendants have produced very few After-Action Reports or Serious Incident Reports (which cover the incidents involving excessive use of force) responsive to Document Request Nos. 14, 18 and 19.

- Blackwater Defendants have failed to produce drug testing records responsive to Document Request Nos. 16 and 17.

- Blackwater Defendants have failed to produce "Do not use" lists responsive to Document Request No. 20.

## ARGUMENT

Relators seek to compel Defendants to produce all of the requested documents. Rule 37 provides that a party may move to compel a response to a discovery request where an opposing party fails to produce documents. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii). Relators are entitled to discovery "regarding any non-privileged matter that is relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b)(1). Rule 26 has been interpreted very broadly, and discovery requests that may lead to information related to any party's claim or defense are relevant. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) ("Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted."). Defendants have refused to produce entire categories of documents, such as financial documents, arguing that they are irrelevant, and have improperly qualified their responses even for those Requests to which they have agreed to produce. Defendants have not met their burden of demonstrating that the documents sought by Relators are not discoverable under the broad discoverability standard of Rule 26, and they should be ordered to produce all responsive documents immediately.

## I. Defendants Must Establish That Relators' Requests Are Objectionable

As the party objecting to the discovery requests, Defendants bear the burden of demonstrating that their objections are valid and that Relators' requests are impermissible. *See Kinetic Concepts, Inc. v. ConvaTec, Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010) ("Over the course of more than four decades, district judges and magistrate judges in the Fourth Circuit . . . have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion."). Defendants object to each of Relators' Document Requests on one or more of three grounds: relevance, overbreadth, and undue burden. As detailed below, Defendants have failed to carry their burden as to any of these objections.

In addition, Defendants' failure to provide documents "as requested" on October 20, 2010, Fed. R. Civ. P. 34(b)(2)(B), or to offer a "specific time" for production as an alternative renders their discovery responses inadequate under rule Rule 34:

> A response to a request for production of documents which merely promises to produce the requested documents at some unidentified time in the future, without offering a specific time, place and manner, is not a complete answer as required by Rule 34(b) and, therefore, pursuant to [the provision now codified at Rule 37(a)(4) ] is treated as a failure to answer or respond.

*Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 656 (D. Md. 1997). *See also Aerodyne Sys. Eng'g, Ltd. v. Heritage In'l Bank*, 115 F.R.D. 281, 284-85 (D. Md. 1987) ("[T]he promise to continue to search for records and supplement [one's] responses in the future, is a completely inadequate response to a long standing discovery request . . . ."). Defendants have informed Relators that their production is rolling, but have not provided an end date. *See* Ex. C. Defendants' "stated intention to make some production at an unspecified date of its own choosing" is treated as a failure to respond and waives Defendants' objections. *Kinetic Concepts.*, 268 F.R.D. at 247.

Defendant's delay is severely prejudicing Relators' ability to prepare their case.  Under the current scheduling order, Relators' expert reports are due in less than one month on December 6, 2010, and the close of discovery is January 14, 2011.[4]  Relators' experts have not been able to review the vast majority of responsive documents because they have not been produced, and Defendants have not informed Relators when their production will be complete. Likewise, Relators have been hampered in their efforts to schedule depositions because they cannot effectively prepare for depositions without the benefit of the documents.  *See Jayne H. Lee*, 173 F.R.D. at 655 (noting that delayed production "derails the discovery process, because parties often wait to schedule depositions until after document production has occurred").

## II.   Defendants' Refusal To Produce Relevant Documents Is Improper

Defendants have refused to produce broad categories of documents, objecting on the grounds of relevance, burden or breadth, or some combination of these.  Defendants' relevance and breadth objections rest on an overly narrow reading of the allegations in the Second Amended Complaint and fail under the very permissive standard of Rule 26.  "Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted."  *Carefirst*, 334 F.3d at 402.  Likewise, Defendants have failed to establish undue burden.

### A.   *Defendants' Refusal To Produce Financial Documents (Blackwater Req. Nos. 3, 4, 9; Greystone Req. Nos. 4, 6) Beyond the Allegedly Fraudulent Invoices and Supporting Documentation Cannot Stand Under the Broad Discoverability Standard of Rule 26*

Relators' requests for financial records kept in the ordinary course of business go to the very heart of the litigation.  These records will reveal the extent and nature of the fraud allegedly perpetuated by Defendants and allow for a determination of the amount of actual damages.

---

[4] Relators have requested a 30-day extension for the close of discovery, but Defendants have only consented to a two-week extension.  Relators are filing a motion for an extension with the Court today, November 12, 2010.

**Document Request No. 9 to Blackwater Defendants and Document Request No. 6 to Defendant Greystone**: Produce all financial records, including but not limited to bank account statements (whether received in hard copy or electronically), profit and loss statements, cost accounting records, accounts payable records, vendor invoices, payroll statements, tax filings and any other Documents maintained by Defendants that reflect, refer or relate to funds obtained or spent in the course of implementing the WPPS and Homeland Security contracts.

**Defendants' Objection:** Defendants object to this request on the grounds that it is overly broad and unduly burdensome in that it will require the production of virtually any financial document created over the course of the contracts. This request also seeks documents that are irrelevant to the allegations in the SAC and it is not reasonably calculated to lead to admissible evidence. For example, bank account statements, payroll statements, tax filings, profit and loss statements, and accounts payable records do not bear on whether or not defendants submitted false claims. Further, defendants object on the ground that the phrase 'funds obtained or spent' is vague and ambiguous. Further, it is overbroad because the request is not limited to the contracts at issue in the SAC.

**Defendants' Response**: Defendants will not produce documents responsive to this request, though some documents responsive to this request may be produced under other requests.

Defendants have refused to provide financial documents created in the ordinary course of business, claiming that Relators' Requests are overly broad, unduly burdensome, and irrelevant. Defendants have failed to meet their burden as to each of these objections. In fact, the documents sought in Relators' Document Requests are relevant and not overbroad. "[I]n the context of a fraud investigation . . . [s]tanding alone, a particular document may appear innocuous or entirely innocent, and yet be an important piece of the jigsaw puzzle that investigators must assemble. The complexity of a fraud scheme, however, should not be permitted to confer some advantage on the suspected wrongdoer." *United States v. Srivastava*, 540 F.3d 277 (4th Cir. 2008); *see also United States v. Shamy*, 656 F.2d 951, 958 (4th Cir. 1981) (holding in a mail fraud case that the prosecution was "entitled to remove the curtain from the entire picture. Evidence of [the] need . . . for large sums of money, and the manner in which those funds were acquired were highly relevant to proof of the scheme to defraud. . . ."); *United*

*States ex rel. Lissack v. Sakura Global Capital Markets, Inc.*, 377 F.3d 145 (2nd Cir. 2004) (explaining that "the entire case will depend on an examination of financial records and allegedly false statements to determine whether the claims . . . relying on those records and statements are proper . . . ."); *United States v. Norton*, 867 F.2d 1354, 1360 (11th Cir. 1989) ("recognizing financial records as part of a "paperpuzzle" verifying fraud); *Andresen v. Maryland*, 427 U.S. 463, 480 n.10 (1976) (stating that the government was investigating a "complex real estate scheme whose existence could be proved only by piecing together many pieces of evidence" and that "[l]ike a jigsaw puzzle, the 'picture' of [the unlawful scheme] . . . would be only shown by placing in proper place the many pieces of evidence that, taken singly, would show comparatively little"); *United States v. Phillips*, 588 F.3d 218, 224 (4th Cir. 2009) (stating "the financial records of a suspect may well be highly probative of violations of a federal fraud statute").

Defendants' production of only the falsified invoices and supporting documentation would simply support Defendants' defenses.  It is only when those documents are placed in context and other documents are produced, such as the actual accounts payable to travel companies and expense reports regarding the cost of travel, that the falsity of the invoices can be seen, and the pieces of the fraud puzzle can be put together.

First, Relators have requested Defendants' payroll records.  Relators allege that Defendants inflated their personnel costs by charging the government for days when employees were not working and were not being paid by Defendants.  The payroll records, standing alone, may not appear fraudulent, and the invoices submitted to the government, standing alone, may not appear fraudulent.  It is only when these two sets of documents are compared against each other that the fraud becomes evident.

Second, Relators have requested Defendants' accounts receivables and accounts payables.  These are the first part of the revenue stream and will establish what Defendants owed others and what was owed to them.  Like the comparison of payroll records with invoices, comparison of accounts payable and receivable with invoices will show whether Defendants were over-charging the government for reimbursable expenses.  Relators also allege that Defendants were involved in the purchase of illegal weapons through a company called LeMas.  Accounts payable will evidence monies owed to that company, and supporting invoices will further establish and help prove Relators' worthless services claim.

Third, Relators have requested bank account records.  Like other financial documents, bank statements are a point of comparison to understand the other pieces of the puzzle.  For example, a line item on a bank statement may show payment to a third party vendor for equipment.  If in comparison, an invoice to the government shows an inflated payment, fraud becomes apparent.

Finally, Relators need financial documents to calculate damages.  Under the False Claims Act, a person who knowingly presents a false claim for payment "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act."  31 U.S.C. §3729(a). "Ordinarily the measure of the Government's damages [is] the amount it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful." *United States v. Ekelman Assocs., Inc.*, 532 F. 2d 545, 550 (6th Cir. 1976) (quoting *United States v. Woodbury*, 359 F.2d 370 (9th Cir. 1966)); *accord United States ex rel. Oliver v. Gyro House*, 11 Fed. Appx. 773, 2001 WL 312378, at *2 (9th Cir. 2001); *United States v. Cooperative Grain and Supply Co.*, 476 F.2d 47, 62; *United States v. Aerodex, Inc.,* 469 F.2d 1003, 1011 (5th Cir.

1972); *United States v. Grannis*, 172 F.2d 507, 510-11, 514-515 (4th Cir. 1949) (stating that the measure of actual damages in a false claims action is the amount paid by the government minus the amount the government would have paid had the claim been true).  In this case, the government paid Defendants, relying on their assertions that they were billing correctly and providing qualified personnel within the terms of their contracts.  To accurately quantify the damages to the government, Relators must be allowed to examine not only the invoices and supporting documentation that Defendants fraudulently submitted to the government, but also Defendants' financial records in their totality, including for example, records that show what the government actually *paid* and what Defendants were actually owed.

Defendants also argue that this request is unduly burdensome.  This argument fails.  Any burdens imposed on Defendants are outweighed by the need for these documents. *See Doe v. United States*, 253 F.3d 256, 269-71 (6th Cir. 2001) (holding in a health care fraud case that the relevance of the personal financial records of both the defendant and his children outweighed any burden where the government alleged that defendant had illegally transferred assets).

> **Document Request No. 3 to Blackwater Defendants**: Produce all Documents that reflect, refer or relate to the relationship between Defendants and any of the other Defendants, including but not limited to, any Documents reflecting, referring or relating to the transfer of funds from one corporate entity to another.
>
> **Blackwater Defendants' Objection**: Defendants object on the grounds that this request is irrelevant to the allegations and not reasonably calculated to lead to admissible evidence because any transfer of funds does not bear on whether defendants submitted false claims.  Defendants also object to the extent that this request is overly broad and unduly burdensome in that it seeks all documents that "reflect, refer or relate" to the relationship between Defendants and is redundant to Request No. 2.
>
> **Blackwater Defendants' Response**: Defendants will not produce documents responsive to this request.

Blackwater Defendants' refusal to produce is based on their contention that any transfer of funds does not bear on whether Defendants submitted false claims.  Fourth Circuit law is to

the contrary.  The Fourth Circuit has emphasized the relevance of fraudulent transfers in a fraud action.  "[A] time-honored concept in white-collar and fraud investigations is simply to 'follow the money.'  That principle is particularly applicable here, and it is deserving of emphasis. The possession or transfer of 'large sums of money, and the manner in which those funds were acquired [are] highly relevant to proof of [a] scheme to defraud.'"  *Srivastava*, 540 F.3d at 290 (quoting *Shamy*, 656 F.2d at 958).  Relators allege that Defendants funneled and hid proceeds gained through their alleged fraud and that Blackwater Defendants used shell companies to create the appearance of reimbursable payments to unrelated third parties.  *SAC ¶ ¶ 12, 29, 50, 51*.  Specifically, Blackwater Defendants are alleged to have transferred funds to shell companies, Defendant Greystone and Presidential Airways, and reflected those payments as reimbursable expenses to unrelated third parties on the monthly invoices submitted to the State Department.  *SAC ¶29*.  At his deposition Defendant Prince testified that he was the sole owner of Greystone (*Prince Tr. 79-80*), the Prince Group (*Prince Tr. 78*), Xe Services LLC (*Prince Tr. 78*) and U.S. Training Center (*Prince Tr. 79*), and confirmed that he had unfettered control over the revenue stream of these companies (*Prince Tr. 105-106*).

**Document Request No. 4 to Blackwater Defendants**: Produce all documents that analyze the profitability of providing services to the State Department or the Department of Homeland Security.

**Document Request No. 4 to Defendant Greystone**: Produce all monthly profit and loss statements and any other Documents maintained by Defendant Greystone that reflect, refer or relate to the profitability of Defendant Greystone.

**Defendants' Objection**: Defendants object on the grounds that this request seeks documents that are irrelevant and is not reasonably calculated to lead to admissible evidence because profitability is not relevant to any issue in this case.  Revenues of the defendants are not relevant to or reasonably calculated to lead to the discovery of admissible evidence as to whether defendants are liable for making false claims. Liability under the False Claims Act is predicated on the submission of a false claim and not the revenues received by the contractor.  Furthermore, receiving payment from the

government is not an element of a false claim.  Defendants also object to the extent that this request is overly broad because it is not limited to the contracts at issue in the SAC.

**Defendants' Response**: Defendants will not produce documents responsive to this request.

Defendants have refused to produce any documents pursuant to the requests on relevance grounds, contending that liability under the False Claims Act is predicated simply on a submission of a false claim to the government, not payment from the government.  Defendants have not met their burden.

Information about profitability is relevant to the calculation of damages under the False Claims Act.  Defendants' profit is the positive gain after the subtraction of expenses and costs, the calculation of which includes the revenues paid to Defendants by the government, including revenues that were paid out by reason of false statements. *Ekelman Assocs*. 532 F.2d at 550; *Grannis*, 172 F.2d at 510-11, 514-15.  In addition, a profitability analysis created by Defendants is relevant to Defendants' specific intent to submit false claims.  For example, it may list ways in which Defendants could garner more profit by submitting claims to the government for services known to be worthless to avoid the payment of fines (*SAC ¶¶ 33-46*) or by making Defendant Greystone appear to be an unrelated third party to increase reimbursable expenses (*SAC ¶ 29*). Profitability analyses also contain line items about a company's expenses.  If these expenses do not comport with invoices submitted to the government or accounts receivable and payable documents, Relators can use this evidence to establish fraud.

**B.**    ***Blackwater Defendants' Refusal To Produce Documents Related to the Purchase of Weapons Cannot Stand Under the Broad Discoverability Standard of Rule 26***

**Document Request No. 11 to Blackwater Defendants**: Produce all Documents that reflect, refer or relate to Defendants' purchase of weapons and ammunition, including but not limited to, Documents that reflect, refer or relate to the purchases of ammunition from a company known as LeMas.

**Blackwater Defendants' Objection**: Defendants object on the grounds that this request seeks documents that are irrelevant and it is not reasonably calculated to lead to admissible evidence because no allegations in the contract relate to the substance of this request and it is not limited to the contracts at issue in the SAC.

**Blackwater Defendants' Response**: Defendants will not produce documents responsive to this request.

Relators have limited this request to documents sufficient to show (1) the funds expended on weapons and ammunition, (2) the sources from which the weapons and ammunition were purchased, and (3) the dates of the weapons and ammunition purchases. *See* Exhibit C. Despite this narrowing, Defendants still refuse to produce any documents responsive to this request, arguing that the request seeks documents that are irrelevant and not reasonably calculated to lead to admissible evidence. In fact, Relators allege in the SAC, "Blackwater, acting with approval and ratification from Prince, knowingly retained and continued to bill for personnel who engaged in illegal arms dealing." *SAC ¶43. See also B. Davis Tr. 167-170.* Furthermore, Relators have evidence that Defendants purchased illegal weapons and ammunition, including hollow point bullets, through a company called LeMas. The purchase and use of these weapons was illegal, contrary to the terms of contracts with the government, and in violation of the laws of war. Specifically, invoices of the weapons purchased, the funds used to purchase those weapons, the sources of the weapons and the dates of purchase will establish the evidence about what was purchased, who paid for it and whether such purchases were legal. These documents are relevant to Relators' worthless services claim and should be produced. Blackwater Defendants' boilerplate objection is insufficient to meet their burden.

C.      ***Defendants' Refusal to Produce Documents Maintained by Individual Custodians Identified by Relators Cannot Stand under the Broad Discoverability Standards of Rule 26***

16

**Document Request No. 22 to Blackwater Defendants and Document Request No. 11 to Defendant Greystone**: Produce all non-classified and non-privileged Documents that were authored by, sent to, or maintained by the individuals identified on Exhibit A.

**Defendants' Objection**: Defendants object on the grounds that this request is overly broad in that it requests all documents "authored by, sent to, or maintained by" these individuals regardless of subject matter and it is unduly burdensome in that it requires locating, reviewing, and producing any document associated with more than 150 individuals included in Exhibit A regardless of their bearing on the allegations in the complaint.   Defendants also object on the grounds that it seeks documents that are irrelevant and not reasonably calculated to lead to admissible evidence.   Further, it is overbroad because the request is not limited to the contracts at issue in the SAC.[5]

**Defendants' Response**: Defendants will not produce documents responsive to this request.

Defendants have refused to provide any documents responsive to this Request and have objected that the Request is irrelevant, overbroad, and unduly burdensome.   Relators' request provides a tailored list of names of the individuals who played a role in or who have knowledge of the two fraudulent schemes Relators allege.   These approximately 150 individuals were identified in the SAC, by Relators in depositions and through Relators' investigation.   Each of the individuals identified by Relators is believed to have knowledge of some or all of the following categories of information, each of which is relevant to Relators' billing fraud and worthless services allegations: (1) Defendants' business with the State Department and the Department of Homeland Security, (2) transfer of funds among related companies, (3) use of force, (4) qualifications of its personnel, (5) training, discipline and termination of its personnel, (6) drug and alcohol testing of its personnel, (7) payments to employees, and (8) document destruction and retention.   Each of the individuals identified by Relators is believed to have been involved in or has knowledge of some or all of these categories, and each category is relevant to billing fraud and worthless services allegations.

---

[5]     The last two sentences of this objection were reversed in Defendant Greystone's objection.  Otherwise, the objections were identical.

For example, Relators seek documents authored by, sent to, or maintained by several individuals engaged in active guard duty, including, Luke Doak who Relators testified was involved in a "bad shoot." *M. Davis Tr. 226*; *B. Davis Tr. 246*.  These documents are reasonably calculated to lead to the admission of evidence regarding Doak's qualifications, his use of excessive force, his use of any drugs and alcohol, Defendants' knowledge of his qualifications, and the billing of his services in spite of that knowledge.  Relators also seek documents from Pamela Gay and Danielle Esposito, individuals in the billing department who have knowledge of the falsified travel invoices and other falsified expenses.  Defendants have failed to meet their burden of establishing lack of relevance, overbreadth, or undue burden.

### D.      *Defendants' Refusal To Produce Documents Related to Internal Investigations Cannot Stand Under the Broad Discoverability Standards of Rule 26*

**Document Request No. 23 to Blackwater Defendants/Document Request No. 12 to Defendant Greystone**: Produce all Documents that reflect, refer or relate to any internal investigations.

**Defendants' Objection**: Defendants object to this request to the extent that it is overly broad and unduly burdensome because it seeks any documents that "reflect, refer, or relate" to internal investigations and it is not limited to any contract. It is also overbroad because the request is not limited to the contracts at issue in the SAC. Defendants also object to this request on the grounds that it seeks documents that are irrelevant and is not reasonably calculated to lead to admissible evidence.

**Defendants' Response**: Defendants will not produce documents responsive to this request.

Defendants have refused to provide any documents responsive to this request, objecting that it is irrelevant, overly broad, and unduly burdensome.  However, as noted in Relators' letter to Defendants' counsel on October 29, 2010, when Defendant Prince was asked about internal investigations during his deposition, he testified that, with only one exception, Defendants failed to conduct *any* internal investigations regarding Defendants' billing of the United States, personnel qualifications, drug and alcohol use by personnel, modification of weapons by

personnel, and incidents involving the excessive use of force by personnel. *See Prince Tr. 297-300*. Relators suggested that Defendants stipulate that no internal investigations were conducted except the one identified by Defendant Prince. Absent such a stipulation, Defendants must be compelled to produce documents relating to all internal investigations. In any event, Defendants should have to provide at least those documents relating to the single internal investigation identified by Defendant Prince.

Defendants have not met their burden of establishing that Relators' request for documents related to internal investigations is irrelevant, overbroad, or unduly burdensome. Courts in this Circuit have noted the particular relevance of internal investigations and have held there is a strong public interest in disclosure of internal investigations and that this interest is especially strong in suits that affect issues of public concern, health, or safety. *Etienne v. Mitre Corp.*, 146 F.R.D. 145, 148-49 (E.D. Va. 1993). Moreover, production of documents related to internal investigations supports "the public's interest in encouraging broad discovery and the court's making decisions based on all available information." *Deel v. Bank of America, N.A.*, 227 F.R.D. 456, 459 (W.D. Va. 2005) (ordering documents related to internal investigations be produced). An internal investigation which establishes the knowledge of management regarding illegal acts by personnel is relevant to Relators' worthless services allegations. For example, Relators allege that Defendants knowingly retained and billed for individuals who used controlled substances, such as steroids. Evidence that Defendants inquired into drug use and found that employees were using steroids, but retained those employees and billed the government for their services is relevant to Relators' worthless services claim. Defendants failed to meet their burden and should be compelled to produce documents responsive to this Request.

III.    **Even Where Defendants Have Agreed To Produce Documents, They Have Impermissibly Qualified And Limited Those Responses (Requests 7, 8, 12-20 to Blackwater Defendants; Requests 5, 7, 8, 10 to Greystone)**

Blackwater Defendants' and Defendant Greystone's third general objection to Instruction No. 3 of the Document Requests, which restricts the timeframe to June 2005 through May 2009, is inappropriate, and Defendants should be ordered to produce documents for the period from January 1, 2004 through the present. *See United States v. R&F Props. of Lake County, Inc.*, 433 F.3d 1349, 1359 (11th Cir. 2005) (holding that district court committed clear error when it restricted discovery to the term of Relator's employment because the United States was the real party in interest even if it did not control the litigation and, therefore, such a restriction "misconstrued the False Claims Act"). The Second Amended Complaint does not limit its allegations to the period from June 2005 to May 2009, but alleges that Blackwater Defendants engaged in a unitary and ongoing fraud that began prior to Relators' employment and continued after their employment ended. *See, e.g.*, Statement of Material Disclosure Submitted by Brad Davis ("Brad Davis Declaration") ¶ 33 ("I personally observed substantial and ongoing fraud by Blackwater."); Statement of Material Disclosure by Melan Davis ("Melan Davis Declaration") ¶ 5 ("When I arrived and began work on January 18, 2006, I discovered that Blackwater had been failing to engage in even the most rudimentary form of record-keeping relating to its existing contracts with Homeland Security and the Federal Emergency Management Agency."); ¶ 30 ("I discovered a substantial amount of fraudulent billing."). Not only does the Second Amended Complaint fail to contain a time limitation, but conduct that occurred before and after the conduct known to Relators is relevant to their allegations of a unitary and ongoing practice of fraudulent billing. *See Vanguard Military Equip. Corp. v. David B. Finestone Co.*, 6 F. Supp. 2d 488, 495 (E.D. Va. 1997) (finding that documents dating four years prior to the statute of limitations cutoff for plaintiff's breach of contract claim were discoverable because plaintiff

20

alleged an ongoing fraud).  Finally, because the Relators stand in the shoes of the government

who is the real party in interest, they are entitled to prosecute the fraud as if they were the United

States, which includes the entire scope of the fraudulent conduct.  *See United States ex rel.*

*Milam v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 961 F.2d 46, 48-50 (4th Cir. 1992) (holding

that "[a] *qui tam* relator is essentially a self-appointed private attorney general" who is afforded

the same privileges as the United States); *United States ex rel. Detrick v. Daniel F. Young, Inc.*,

909 F. Supp. 1010, 1015 (E.D. Va. 1995) ("This is an action filed by a relator, as the *qui tam*

plaintiff is called, in the name of the United States against any defendants alleged to have

defrauded the government."); *R&F Props.*, 433 F.3d at 1359.  Defendants should be ordered to

produce documents for the period from January 1, 2004 until the present.

A.    ***Request 7 to Blackwater Defendants***

**Document Request No. 7 to Blackwater Defendants**:    Produce all Documents that
reflect, refer or relate to Defendants' invoicing, charging or billing the United States in
any way for services provided under the WPPS or Homeland Security contracts.

**Blackwater Defendants' Objection**: Defendants object to this request to the extent that
it is overly broad and unduly burdensome because the language "reflect, refer or relate"
could require the defendant to locate, review, and produce nearly any document created
in the course of performance of the contract.  Further, it is overbroad because the request
is not limited to the contracts at issue in the SAC.

**Blackwater Defendants' Response**: Without waiving their objections, Defendants will
produce invoices and supporting documents submitted to the United States government
for payment under the WPPS II task orders and/or change orders related to this lawsuit
and the Homeland Security contracts and related task orders or change orders.

Although Blackwater Defendants have agreed to produce documents responsive to

Request 7, the parties have failed to reach an agreement as to the scope of Blackwater

Defendants' production.  Relators have asked for "all Documents that *reflect, refer or relate* to

Defendants' invoicing, charging or billing the United States in any way for services provided

under the WPPS or Homeland Security contracts," but Blackwater Defendants refuse to produce

any documents other than the actual "invoices and supporting documents," arguing that Relators' Request encompasses "nearly any document created in the course of the performance of the contract." Relators' Request is not nearly as broad as Blackwater Defendants contend, but does reach beyond Blackwater Defendants' actual invoices and supporting documentation – the very documents that Relators allege Defendants falsified. Relators do not seek documents wholly unrelated to their fraudulent billing or worthless services claims. Instead, Relators seek simply the pieces necessary to complete the fraud puzzle, such as accounts payable to travel companies and other "points of comparison." *See supra* at Section IIA.

Blackwater Defendants also have limited their production to invoices and supporting documentation submitted to the United States for payment under the WPPS II task orders and/or change orders.[6] Relators seek documents that reflect, refer, or relate to Defendants' invoicing, charging, or billing the United States under the WPPS I contract as well. It is Relators' understanding that Blackwater Defendants were awarded work under the WPPS I contract in early 2004 and that WPPS I was superseded by WPPS II in June 2005. As discussed above, Relators are entitled to discovery regarding the entire scope of Blackwater Defendants' fraudulent conduct including its billing the government for services performed on WPPS I. *See Milam*, 961 F.2d at 48-50; *R&F Props.*, 433 F.3d at 1359.

## B.   *Request 5 to Defendant Greystone*

**Document Request 5 to Defendant Greystone**: Produce any agreements, contracts, memoranda of understanding, or any other Documents that memorialize in any way the interactions between Defendant Greystone and the other Defendants.

**Defendant Greystone's Objection**: Defendant objects to the extent that this request is overbroad and unduly burdensome because it seeks any documents reflecting ***any***

---

[6] Relators note that because of Defendants' rolling production, they have not received all of the invoices and supporting documentation even for the WPPS II contract.

interactions between defendant Greystone and other defendants, which is broader than the allegations which are that defendants improperly billed management fees to the government. By its terms, this request could require defendant to locate, review, and produce documents related to, for example, office space or routine personnel issues.

**Defendant Greystone's Response**: Without waiving its objection, Defendant will produce any contracts between it and the other Defendants that relate to the allegations in the Second Amended Complaint.

Defendant Greystone has failed to produce a single document in response to this Request and has refused to produce any documents other than the actual contracts between it and the other Defendants. Relators have alleged that Blackwater Defendants used Defendant Greystone to create the appearance of reimbursable payments to unrelated third parties. Relators allege that Blackwater Defendants transferred funds to Defendant Greystone and reflected those payments as reimbursable expenses on the monthly invoices submitted to the Department of State, even though only payments to third parties were reimbursable. *SAC ¶29.* Furthermore, Relator Melan Davis has testified that Greystone was involved in the creation of false travel documentation. *See M. Davis Tr. 39.* With no more than the contracts, Relators will be hampered in their efforts to establish the parameters of the relationship between Blackwater Defendants and Defendant Greystone and that they were actually related companies and participated in the generation of false documents.

## IV.    Defendants' Qualified Responses Are Invalid

For thirteen of twenty-five Requests, Defendants have agreed to produce documents, but have impermissibly qualified their responses and made them subject to objections of overbreadth, undue burden, and irrelevance. *See* Blackwater Defendants' Responses 8, 12-20; Defendant Greystone's Responses 7, 8, 10. As another district court in the Fourth Circuit recently explained, such qualified responses obfuscate what Defendants are agreeing to produce:

> By appending the adjective "relevant" as a qualifier to their otherwise sweeping declaration of compliance with Defendants' requests and by reiterating that they

produced documents "subject to" certain objections, Plaintiffs' foregoing response confuses more than it clarifies. . . "This type of answer hides the ball.  It leaves the opposing party wondering . . . what documents are being withheld.  Furthermore, it permits the defendant to be the sole arbiter of that decision.  Such an objection is really no objection at all as it does not address why potentially responsive documents are being withheld.   The responding party, having no incentive to err on the side of disclosure, has arrogated to itself the authority to decide questions of relevance which is unquestionably the decision of the judge."

*Kinetic Concepts*, 268 F.R.D. at 248 (quoting *Athridge v. Aetna Casualty and Surety Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998)).

Like the *Kinetic Concepts* plaintiffs' relevance qualifier, Defendants have qualified their response and promise to "produce any responsive documents" by appending the phrase "related to billing or the allegations in the SAC for the relevant period" to eight of Relators' Document Requests (Blackwater Resp. Nos. 8, 12, 13, 14, 20; Greystone Resp. Nos. 7, 8, 10) and the phrase "created or relied on during the relevant period" to five of Relators' Requests (Blackwater Resp. Nos. 15-19).  In *Kinetic Concepts*, the Court also found that plaintiffs had impermissibly qualified their responses to defendants' document requests by subjecting their responses to a series of broad objections and by stating that they would produce "relevant" documents.  *Id.* Here, Defendants have responded that they will produce "without waiving their objections," which "serves only to obscure potentially discoverable information and provides no mechanism for either plaintiffs or the Court to review [Defendants'] decisions."  *Athridge*, 184 F.R.D. at 190.  Relators will be left to wonder what documents are being withheld even after Defendants' production is complete.  Defendants should be compelled to withdraw their objections and provide an unqualified response to Relator's Requests, or to specify what documents they are withholding and precise reasons why.

## **CONCLUSION**

For the foregoing reasons, Relators respectfully request this Court grant Relators' Motion to Compel and order Defendants to produce all documents responsive to Relators' Document Requests.

Respectfully submitted,

Date: November 12, 2010

_____/s/Susan L. Burke_____
Susan L. Burke (VA Bar No. 27769)
Susan M. Sajadi
Counsel for Relators
BURKE PLLC
1000 Potomac Street, N.W.
Washington, DC 20007-1105
Telephone: (202) 386-9622
Facsimile: (202) 232-5513
sburke@burkepllc.com

Joseph F. Rice
Frederick C. Baker
James W. Ledlie
Rebecca M. Deupree
MOTLEY RICE, LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 5(E), counsel conferred, and continue to confer, but were unable

to reach agreement.

Date: November 12, 2010

                                         \_\_\_\_/s/Susan L. Burke_____
                                         Susan L. Burke (VA Bar No. 27769)
                                         Counsel for Relators
                                         BURKE PLLC
                                         1000 Potomac Street, N.W.
                                         Washington, DC 20007-1105
                                         Telephone: (202) 386-9622
                                         Facsimile: (202) 232-5513
                                         sburke@burkepllc.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of November 2010, we filed the Memorandum in

Support of the Motion to Compel using the CM/ECF system, which will send a notification to

counsel for the United States and counsel for the Defendants.


_____/s/Susan L. Burke_____
Susan L. Burke (VA Bar No. 27769)
Counsel for Relators
BURKE PLLC
1000 Potomac Street, N.W.
Washington, DC 20007-1105
Telephone:    (202) 386-9622
Facsimile:    (202) 232-5513
sburke@burkepllc.com