UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA ex rel. MELAN DAVIS and BRAD DAVIS,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>U.S. TRAINING CENTER, INC.,<br><br>　　　Defendant. | Case No. 1:08-cv-1244 – TSE-TRJ |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE IRRELEVANT AND UNFAIRLY PREJUDICIAL <u>ECONOMIC-RELATED EVIDENCE</u>**

Specific economic-related evidence, such as the amount of the defendant's assets and profits, the income level or lifestyles of the defendant's employees, and the amount and nature of its discretionary expenditures, should be excluded from evidence in the trial of this matter, because it is irrelevant to relators' claims, and in the alternative, because the risk of its prejudicial impact substantially outweighs any possible probative value.  The amount of assets, profits, and income of defendant is not relevant to any element of a false claim.  The only purpose for eliciting such monetary figures is to incite bias and disapproval among the jurors, thereby distracting from the actual elements to be considered under the False Claims Act.  Even assuming *arguendo* that relators do not have improper motives for seeking to introduce such evidence, its marginal probative value is greatly outweighed by the risk of prejudice and jury confusion.

## ARGUMENT

Courts long have recognized the potential for bias when specific information concerning a defendant's economic means, such as the value of a defendant's assets, the amount of its income, the quantity of its profit, and the extent and purpose of its discretionary expenditures, are introduced as evidence or alluded to at trial.  *See, e.g.*, *Socony-Vacuum Oil Co. v. United States*, 310 U.S. 150, 239 (1940) ("[A]ppeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them."); *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 897-98 (D.C. Cir. 2010) (remanding for new trial where "[t]he only way [profits and asset values] could have affected the jury was to prejudice it"); *Koufakis v. Carvel*, 425 F.2d 892, 902 (2nd Cir. 1970) (remanding for new trial where references to "untold wealth," the defendant's "five townhouses," and "[m]ulti-millionaires" could "be taken as suggesting that the defendant should respond in damages because he is rich").

In their memorandum in support of their motion for summary judgment (Dkt. No. 322), relators make numerous unnecessary and inflammatory references to the defendant's assets or compensation.[1]  For example, the relators' memorandum refers to:  (1) a salary of $300,000 and compensation post-resignation of $425,000 for a specified employee; (2) a salary of $2.5 million (referenced not once, but *twice*) for Erik Prince; (3) specific amounts of profit earned by Greystone; (4) a monthly $25,000 fee earned by one of the defendant's contractors; and (5) a transfer of $3.5 million from Mr. Prince to two of the defendant's employees.  Dkt. No. 322

---

[1] On May 20, 2011, this Court granted summary judgment on claims against defendants Blackwater Security Consulting, LLC, Xe Services, LLC, Greystone Limited, and The Prince Group, LLC.  Dkt. No. 365.  On June 24, 2011, the Court granted summary judgment on all claims against defendant Erik Prince.  Dkt. No. 457.  As such, the only remaining defendant is U.S. Training Center, Inc. ("USTC").

(relators' memorandum in support of summary judgment motion) ¶¶ 1 n.5, 5, 15 n.12, 42, 82 and at 47.  In a "notice of additional evidence" that relators belatedly filed in support of their summary judgment arguments, they also submitted to the Court e-mail communications and other documents that solely concern dividends paid to Mr. Prince (*e.g.*, PG03240936, PG03240938, PG0324049).  *See* Dkt. No. 363.  The manner and extent to which such information was referenced in connection with the relators' summary judgment motion (and post-summary judgment "notice of additional evidence") suggests that any purported legitimate purpose is merely a pretext.  If allowed to go unchecked, the same type of emotion-inducing rhetoric employed in the relators' summary judgment filings undoubtedly will become a theme for relators at trial.

I.   **Financial Evidence Revealing Actual Amounts of Profits, Assets, Income, or Discretionary Expenditures Is Not Relevant.**

District courts have broad discretion in exercising control over the presentation of evidence at trial, Fed. R. Evid. 611(a), and in determining whether evidence is relevant under Fed R. Evid. 401 and 402.  *See United States v. Fernandez*, 913 F.2d 148, 154-55 (4th Cir. 1990).  The proponent of the evidence bears the burden of proving its relevance.  *United States v. Jefferson*, 623 F. Supp. 2d 678, 681 (E.D. Va. 2009).  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

Allegations of fraud do not automatically entitle a relator to introduce the extent of the defendants' wealth or details about the defendants' lifestyle.  *Miller*, 608 F.3d at 897-98 (holding in False Claims Act case that evidence of corporations' profits and assets was not relevant to determination of whether one corporation was alter ego of another and that the "only" possible effect of wealth-related evidence was to prejudice jury).  During this Court's April 1,

2011 motions hearing before Magistrate Judge Jones, relators argued that they needed evidence of Greystone's profits to establish a motive for the alleged fraud. Ex. A (Apr. 1, 2011 Hr'g Tr.) at 28:20-29:14. Motive, however, is not a relevant consideration in determining the existence of a false claim. The False Claims Act requires only "(1) a false statement or fraudulent course of conduct; (2) made or carried out by the defendant with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999). To establish scienter, knowledge of the falsity of the claim is required, not a specific intent to submit false claims or a corrupt motive. Accordingly, the defendant's actual profits and financial means are ancillary matters that will not assist the trier of fact in determining whether the elements of a false claim have been established.

Moreover, even if the Court finds that motive is relevant, the defendant's desire to make a profit is as probative of an intent to generate profits through legitimate means as it is of a willingness to generate profits through illegitimate practices. The Sixth Circuit aptly described this quagmire in the context of criminal charges. The court's analysis, however, is equally applicable to civil provisions intended to punish fraudulent conduct. As the Sixth Circuit explained:

> Financial gain is the motive for committing almost all financial crimes . . . . The problem with a general rule of permitting evidence of an affluent lifestyle to show 'motive' for committing a crime is that it ignores the real possibility that the extreme or extravagant wealth or spending was made possible by legitimate means and, if so, the introduction of such evidence would appeal solely to class prejudice. Therefore, the real issue is whether the relevance of motive is outweighed by unfair prejudice . . . .

*United States v. Jackson-Randolph*, 282 F.3d 369, 378 (6th Cir. 2002)[2]; *see also United States v. Cooper*, 286 F. Supp. 2d 1283, 1291 (D. Kan. 2003) (excluding evidence of defendants' wealth in trial for health care fraud).  Because defendant's assets have no probative value in helping to establish whether it made profits through illegitimate means, such evidence should be excluded.

Finally, even if defendant's desire to make a profit was somehow relevant to establishing whether it knew that the allegedly false claims were in fact false, the only findings relevant to establish profit motives is *whether* the defendant operated for profit, *whether* the alleged fraudulent scheme would have had the tendency to increase the defendant's profits, and *whether* employee compensation was tied to profits.  Although it appears relators intend to argue that the *amount* of profit is indicative of fraud, they have no foundation for this speculative argument.  The extent of defendant's profits is simply irrelevant to the claims in this case.  Accordingly, attempts to quantify defendant's profits, income, and expenditures, to identify the beneficiaries of, or items purchased with, discretionary expenditures, and to reveal details about the lifestyles of defendant's employees would serve only the improper purpose of eliciting an emotional response from, and biasing, the jury.  *Cf. VSI Holdings, Inc. v. SPX Corp.*, No. 03-CV-70225, 2005 WL 5980804, at *8 (E.D. Mich. Apr. 12, 2005) (excluding economic evidence and stating "[i]f the size and wealth . . . are presented for the purpose of appealing to the jury's sympathy,

---

[2] While the court in *Jackson-Randolph* held that evidence of the defendant's lifestyle was relevant and admissible, at issue was hidden wealth.  And the court so decided only after a lengthy analysis of the probative value of the evidence in the context of the facts of the case.  The court determined that defendant's lifestyle purportedly exceeded the income on her tax returns, suggesting that a portion of her income derived from illegitimate business operations.  *Compare Jackson-Randolph*, 282 F.3d 369, 378 (6th Cir. 2002) *with Cooper*, 286 F. Supp. 2d 1283, 1291 (D. Kan. 2003) (citing *Randolph* and holding evidence of spending habits unfairly prejudicial where there was no argument that criminal defendants did not have sufficient legitimate income to cover their expenditures).  Unlike *Jackson-Randolph*, here, the amount of the defendant's income or the possibility of hidden income is not at issue.

5

such evidence will not be admitted"). Accordingly, this Court should exclude all such evidence as irrelevant.

## II. The Prejudicial Nature of Wealth-Related Evidence Outweighs Any Probative Value.

Even if deemed relevant, financial information should be excluded under Fed. R. Evid. 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. District courts should exclude evidence if "there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *United States v. Van Metre*, 150 F.3d 339, 351 (4th Cir. 1998) (quoting *United States v. Powers*, 59 F.3d 1460, 1467 (4th Cir. 1995)). That most certainly is the case here.

The consideration as to whether evidence is unfairly prejudicial must turn on the specific facts of the case. *Socony-Vacuum Oil*, 310 U.S. at 240 ("[E]ach case necessarily turns on its own facts."). Here, the financial and profit information relators seek to exploit is substantial. In addition, defendant and its related companies have been the subject of much criticism in the news media, such that it is highly doubtful that all of the jurors have not been exposed previously to derogatory claims about them. The uncommon economic means of the defendant, coupled with the already high risk of juror bias, are relevant and legitimate considerations in determining whether, in this particular case, financial evidence concerning the defendant will be unfairly

6

prejudicial.  *See Schwab v. Philip Morris USA, Inc.*,³ No. CV 04-1945, 2005 WL 2401647, at *3 (E.D.N.Y. Sept. 29, 2005) (excluding expert's profits disgorgement model in part because "focusing on profits would tend to be unduly prejudicial under Rule 403"); *L-3 Commc'ns Corp. v. OSI Sys., Inc.*, No. 02 Civ. 9144, 2006 WL 988143, at *6 (S.D.N.Y. Apr. 13, 2006) (holding that testimony about party's "wealth and lifestyle" would be unfairly prejudicial); *cf. Dowless v. Warren-Rupp Houdailles, Inc.*, 866 F.2d 1415, at *4 (4th Cir. 1989) (unpublished) (holding that in breach of contract case evidence of sales and net-income during period in question likely prejudiced the jury's finding concerning amount of damages and limiting instruction could not cure court's error).  If not excluded, defendant's profits and the incomes of its employees certainly will become a theme at trial aimed at distracting the jury from the elements required to establish a false claim.

     For this reason, courts often limit evidence about profits and compensation by excluding actual dollar amounts, while allowing the opposing party to explore other aspects of a party's business model or method of compensation.  In *Curtis Manufacturing Co. v. Plasti-Clip Corp.*, for example, the court held that the defendant's financial condition and the extent of his profits were not relevant to the plaintiff's claims of unfair trade practices.  933 F. Supp. 94, 101 (D.N.H. 1995).  The court, however, allowed attempts to establish that the defendant's compensation was tied to profits, while disallowing any attempts to establish the quantity of his compensation.  Similarly, in *Niver v. Travelers Indemnity Co. of Illinois*, the court held that the plaintiff could attempt to establish that insurance adjustors received incentives for minimizing pay-outs, but

---

³ Although the court in *Phillip Morris* did not expressly state in its brief opinion that, in excluding expert testimony about profits, it was taking into account the relatively unpopular public perception of cigarette manufacturers, such can be inferred based on the identity of the parties.

could attempt to quantify those incentives *only* as a percentage of the adjusters' total compensation.  433 F. Supp. 2d 968, 982 (N.D. Iowa 2006) (citing privacy concerns and forbidding discussion of dollar amounts).  In *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, the court held that the defendant's method of compensation was probative, but excluded the amount of the compensation as irrelevant because it would not shed further light on the plaintiff's theory of the case.  No. 04 Civ. 10014 PKL, 2009 WL 3111766, at *6 (S.D.N.Y. Sept. 28, 2009) ("While the method of compensation is probative of a theory that hedging decisions were based on compensation and not mitigation, the Court has serious doubts about the relevance of the actual dollar figure of the Bondholders' compensation.").  Similar compromises are available in this case, and a compromise is consistent with the Court's duty to balance probative value against likely prejudice.  Accordingly, in the event that the Court determines that evidence concerning defendant's financial condition is at all relevant to this case, the exclusion of the actual amount of the defendant's profits and income, for example, will not impede any supposed legitimate purpose of the relators.  Moreover, the Court should categorically exclude any evidence or argument regarding the assets, profits, or other financial information relating to any of the dismissed defendants in this case.

## **CONCLUSION**

For the reasons stated above, the Court should exclude as irrelevant or unduly prejudicial, any evidence offered by relators to establish: (1) the amount of the defendant's financial means, profits, income, or discretionary expenditures; (2) the nature of those expenditures; or (3) the lifestyles of defendant's employees.

Dated: June 29, 2011                              Respectfully submitted,


       /s/David W. O'Brien
Richard L. Beizer (VSB # 02646)
David W. O'Brien (VSB # 14924)
Andy Liu (Admitted *pro hac vice*)
Jody Goodman (Admitted *pro hac vice*)
Brian T. McLaughlin (VSB # 71258)
Elizabeth Carter (Admitted *pro hac vice*)

*Counsel for defendant*

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
P:  202-624-2500
F:  202-628-5116
E:  rbeizer@crowell.com
E:  dobrien@crowell.com
E:  aliu@crowell.com
E:  jgoodman@crowell.com
E:  bmclaughlin@crowell.com
E:  ecarter@crowell.com

9

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of June 2011, I electronically filed the foregoing Memorandum of Points and Authorities in Support of Defendant's Motion *in Limine* to Exclude Irrelevant and Unfairly Prejudicial Economic-Related Evidence with the Clerk of Court using the CM/ECF system, which will send a notification to the registered participants as identified on the Notice of Electronic Filing (NEF).

       /s/ David W. O'Brien
       David W. O'Brien