**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* Melan Davis and Brad Davis, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:08-CV-1244 – TSE-TRJ |
| U.S. TRAINING CENTER, INC., | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL**
**PRODUCTION OF DOCUMENTS DESIGNATED AS PRIVILEGED**
**AND RESPONSES TO DEPOSITION QUESTIONS**

On March 23, 2011, relators disclosed that they intend to call Lyle Beauchamp, a former independent contractor for defendant USTC, as a witness and that relators' counsel also represents Mr. Beauchamp. Relators' counsel refused to produce Mr. Beauchamp for a deposition during the discovery period, until she was satisfied with defendants' document production. Defendant brought relators' "self-help" refusal to the Court's attention, and the Court ordered relators to produce Mr. Beauchamp and others for deposition promptly. Dkt. No. 344 (May 17, 2011 Order). After relators' counsel finally made Mr. Beauchamp available for a deposition on May 25, 2011, Mr. Beauchamp refused, on the ground of attorney-client privilege (following his counsel's instructions), to answer questions regarding whether he has a retainer agreement with Ms. Burke, the terms of that agreement, and their fee arrangement. Ex. A (Beauchamp Dep. Tr.) at 26:22-28:21. Mr. Beauchamp also followed his counsel's instruction

not to answer whether he has already filed or intends to file a complaint against USTC or any other of the then-defendants in this case. *Id*. at 67:5-68:7.[1]

Moreover, *relators* have refused to produce certain documents obtained or received from Mr. Beauchamp on the grounds of attorney-client and work product privileges, instead identifying them on their privilege log. *See* Ex. B (privilege log). Two documents – Bates numbered LB0833-35 and LB5162-64 – are listed on the log without dates as "Contract," described only as "Agreement between Burke PLLC and Mr. Beauchamp," and withheld based upon "Attorney-Client Privilege/Attorney Work Product." *Id*.[2]

The reason for the relators' and their counsel's refusal to produce the sought after information is most likely that Mr. Beauchamp has retained Ms. Burke for the purposes of filing another suit against defendant and/or former defendants in this case. But it is for precisely that reason that USTC is entitled to the information. Relators have chosen to call Mr. Beauchamp as a witness, so USTC is entitled to establish his bias through evidence of his actual or intended lawsuit.

---

[1] Relators' counsel also represents at least one other independent contractor, Warren Shepherd, whom she has also said she will call as a witness at trial. Mr. Shepherd has not yet been made available for a deposition, and relators' counsel has not yet produced any documents created by or obtained from Mr. Shepherd. Defendant anticipates, however, that a similar, if not identical, issue will arise with respect to contracts between Mr. Shepherd and Burke, PLLC.

[2] Relators' claim that the two contracts at issue are privileged is, at the outset, dubious. To the extent that the contracts were in fact privileged, that privilege has presumably been waived by disclosure of the contracts to the relators. Furthermore, the description of the documents is inadequate. Federal Rule of Civil Procedure 26(b)(5)(A) requires that a party withholding information based on privilege must "describe the nature of the documents… not produced or disclosed – and do so in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

The testimony and documents being withheld as privileged should be compelled because the relators cannot establish that the information sought is protected by any applicable privilege.[3]

## Argument

I. **The Attorney-Client Privilege Does Not Apply to Mr. Beauchamp's Retainer Agreement or to the Information Sought at Mr. Beauchamp's Deposition**

Federal courts narrowly construe and apply the attorney-client privilege. *Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1190 (4th Cir. 1991) ("[T]he [attorney-client] privilege must be strictly construed."); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984) ("[T]he [attorney-client] privilege is to be strictly confined within the narrowest possible limits consistent with the logic of its principle.") (internal citations omitted).

The longstanding judicial interest in maintaining transparency in litigation and interpreting narrowly the scope of the attorney-client privilege has led the Fourth Circuit and other federal courts to conclude that fee arrangements and retainer agreements between counsel and client are not privileged. *See, e.g.*, *NLRB v. Harvey*, 349 F.2d 900, 904-05 (4th Cir. 1965) ("The [attorney-client] privilege is limited to confidential communications, and a retainer is not a confidential communication, although it cannot come into existence without some communication between the attorney and the – at that stage prospective – client.") (quoting *United States v. Pape*, 144 F.2d 778, 782 (2d Cir. 1944)). *See also In re Grand Jury Subpoena*, 204 F.3d 516, 518 (4th Cir. 2000) (affirming trial court's denial of motion to quash subpoena seeking testimony and documents about retention of counsel).

---

[3] Relators bear the burden of demonstrating that the privilege applies. *See Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (quoting *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (proponent of attorney-client privilege bears the burden of demonstrating its applicability).

That retainer agreements and testimony about them are not protected by the attorney-client privilege is not surprising given that "[t]he existence of the relation of attorney and client is not a privileged communication…. So, ordinarily, the identity of the attorney's client, or the name of the real party in interest, and *the terms of the employment* will not be considered as privileged matter." *Behrens v. Hironimus*, 170 F.2d 627, 628 (4th Cir. 1948) (citing 70 Corpus Juris, *Witnesses* § 502) (emphasis added); *see also In re Grand Jury Subpoena*, 204 F.3d at 520 ("'[T]he identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege.'") (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999)); *United States v. Naegele*, 468 F. Supp. 2d 165, 171 (D.D.C. 2007) ("It is established that billing statements and retainer agreements usually are not privileged.") (citing *Chaudhry*, 174 F.3d at 402); *Abednego v. Alcoa, Inc.*, No. 10-CV-009, 2010 WL 2787856, at *2 (D.V.I. July 14, 2010) ("retainer agreements between plaintiffs and counsel are not subject to the attorney-client privilege") (citing *In re Grand Jury Investigation*, 631 F.2d 17, 19 (3d Cir. 1980)).

## II.     The Work Product Doctrine Does Not Apply to Mr. Beauchamp's Retainer Agreement[4]

Relators' withholding the retainer agreements is also inappropriate under the work product doctrine. That doctrine, embodied in the Federal Rules of Civil Procedure, protects "the mental impressions, conclusions, opinions, or legal theories of a party's attorney…" from

---

[4] Counsel's instruction not to answer deposition questions was based solely upon the attorney-client privilege; hence discussion of the work product doctrine only applies to the two documents on the privilege log, not to deposition testimony. *See* Ex. A (Beauchamp Dep. Tr. at 27:22-28:3) ("MR. HAMMOND: So is the basis of your objection attorney-client privilege? MS. BURKE: Yes, it is. I'm instructing him not to answer."); *see also id*. at 67:5-68:7.

disclosure. Fed. R. Civ. P. 26(b)(3)(B); *see also Hickman v. Taylor*, 329 U.S. 495, 508-10 (1947). Only materials "prepared in anticipation of litigation or for trial" constitute attorney work product. Fed. R. Civ. P. 26(b)(3)(A).

Federal courts have consistently rejected work product claims with respect to retainer agreements. *See, e.g.*, *Montgomery Cnty. v. Microvote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) ("[T]he fee agreement letter does not come within the ambit of the work-product privilege.") (citing *Murray v. Stuckey's, Inc.*, 153 F.R.D. 151, 153 (N.D. Iowa 1993)). *See also Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*, No. 08-cv-1559, 2009 WL 3857425, at *2 (S.D. Cal. Nov. 16, 2009) ("[T]he Ninth Circuit has repeatedly held retainer agreements are not protected by the attorney-client privilege or work product doctrine.") (citing *Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995); *United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995); *In re Michaelson*, 511 F.2d 882 (9th Cir. 1975)); *Henry v. Rizzolo*, No. 2:08-CV-00635, 2009 WL 1886272, at *3 (D. Nev. June 29, 2009) ("Courts have held that attorney engagement letters or retainer agreements are not protected by the attorney-client privilege or work-product doctrine.") (citing *Blackman*, 72 F.3d at 1424; *Michaelson*, 511 F.2d 882); *NXIVM Corp. v. Sutton*, No. 06-CV-1051, 2010 WL 2521352, at *3 (D.N.J. June 9, 2010) ("[T]he work-product doctrine did not apply to the …retainer agreement."). *Cf. Naegele*, 468 F. Supp. 2d at 173 ("Attorney bills and/or timekeeping reports are not attorney work product prepared in anticipation of litigation.").

Relators – the party asserting protection from disclosure – bear the burden of establishing that the work product doctrine applies to the two contracts in question, just as they do with the attorney-client privilege. *See NXIVM Corp.*, 2010 WL 2521352, at *3. There is no basis to

conclude here that the doctrine applies, since contracts between attorney and client do not meet the criteria of being prepared in anticipation of litigation and containing counsel's opinions or mental impressions.[5]  Relators should therefore be compelled to produce the contracts.

## III. The Requested Documents and Testimony Are Critical to the Jury's Assessment of Mr. Beauchamp's Credibility

The defendants need the retainer agreements between Mr. Beauchamp and Burke PLLC and information about whether Mr. Beauchamp has sued or intends to sue the defendant, in order to demonstrate Mr. Beauchamp's bias against the defendant.  A witness' bias against a party is always relevant.  *See, e.g.*, 4 Jack B. Weinstein et al., *Weinstein's Federal Evidence* § 607.04[1] (2d ed. 2000) ("Since bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness to determine whether a modification of testimony reasonably could be expected as a probable human reaction.") (footnote omitted); *United States v. Spencer*, 25 F.3d 1105, 1109 (D.C. Cir. 1994) ("[P]roof of bias-that is, "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party' is 'almost always relevant.'") (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984)); *see also Davis v. Alaska*, 415 U.S. 308, 317 (1974) ("[T]he jurors were entitled to

---

[5] Once the party claiming work product protection has demonstrated that documents or other materials fit the definition of attorney work product, the party seeking disclosure may obtain fact work product "upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994) (quoted in *Chaudhry*, 174 F.3d at 403). Opinion work product, containing a lawyer's thoughts, mental impressions, and opinions, is more protected; it "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Id.*  This Court need not address that distinction, however, since relators cannot cross the initial threshold of showing that the doctrine applies here at all.

have the benefit of the defense theory [of witness bias] . . . so that they could make an informed judgment as to the weight to place on [the witness's] testimony...."); *Chavis v. North Carolina*, 637 F.2d 213, 225 (4th Cir. 1980) ("One of the most important factors affecting credibility is the presence of any *bias, prejudice or incentive on the part of a witness to favor one party to the litigation*.") (emphasis added).

Evidence that a witness has initiated a lawsuit against the opposing party is clear evidence of prejudice or bias, bearing directly on the witness' credibility.[6] *See Gambler*, 662 F.2d at 839 ("[T]he defendant must be allowed . . . to set out for the jury the basic facts from

---

[6] Judge Mikva described "three reasons…for allowing impeachment of one party's witness through evidence of his litigation against the opposing party":

> The first is interest: where the outcome of the cause at issue may affect the witness' recovery in parallel litigation, the pecuniary interest may motivate the witness to distort his testimony. This rationale is usually applied to pending or contemplated litigation arising out of the same facts as the case at bar.
>
> A second and broader rationale is based on a view of litigation as an occurrence likely to breed hostility between opposing parties. Like the inference from interest in a related suit, this theory relies on a "prospectant" deduction of partiality from circumstances likely to cause it. This second rationale goes beyond the first, however, and justifies an inference of partiality on the basis of litigation that is wholly unrelated to the case at bar. . . .
>
> The third rationale applies only where the other litigation between the witness and the adverse party is instigated by the witness himself. In that case, the bringing of the suit is "relevant, not only as a circumstance tending to create feeling, but also as involving conduct expressive of feeling," Wigmore's "retrospectant" evidence. This principle would also apply regardless of whether or not the suit reflected the same subject matter as the current proceeding, and whether or not the suit was still pending.

*United States v. Gambler*, 662 F.2d 834, 844-45 (D.C. Cir. 1981) (Mikva, J., dissenting, but agreeing with majority on admissibility of other lawsuits plaintiff filed against defendants).

which the jury may infer hostility. [The witness's] initiation of legal action may be profitably compared with the existence of a quarrel between him and [the defendant]."); *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1392 (D. Kan. 1998) (plaintiff's other lawsuits against defendants (plaintiff's brothers) had "probative value in revealing the degree or intensity of his alleged animosity towards his brothers. The jury is entitled to hear evidence and decide the extent of bias"). *See also* 4 Jack B. Weinstein et al., *Weinstein's Federal Evidence* § 607.04[7] (2d ed. 2011) ("The fact that a witness has or once had a claim against a party is relevant to his or her state of mind when testifying and should be admissible."). Since "[c]ourts generally are 'liberal' in admitting evidence of bias," *Koch*, 2 F. Supp. 2d at 1389, quoting Weinstein § 607.04[1], relators should be compelled to disclose the retainer agreements between Mr. Beauchamp and relator's counsel, and Mr. Beauchamp should be compelled to respond to the questions he refused to answer at his deposition.

## Conclusion

For the reasons stated above, this Court should order production of the contracts and responses to the deposition questions.

Respectfully submitted,

July 1, 2011

/s/David W. O'Brien
Richard L. Beizer (VSB # 02646)
David W. O'Brien (VSB # 14924)

8

      Andy Liu (Admitted *pro hac vice*)
      Jody Goodman (Admitted *pro hac vice*)
      Brian T. McLaughlin (VSB # 71258)
      Elizabeth Carter (Admitted *pro hac vice*)

      *Counsel for defendant*

      CROWELL & MORING LLP
      1001 Pennsylvania Avenue, N.W.
      Washington, D.C.  20004-2595
      P:  202-624-2500
      F:  202-628-5116
      E:  rbeizer@crowell.com
      E:  dobrien@crowell.com
      E:  aliu@crowell.com
      E:  jgoodman@crowell.com
      E:  bmclaughlin@crowell.com
      E:  ecarter@crowell.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of July 2011, I electronically filed the foregoing Memorandum in Support of Defendant's Motion to Compel with the Clerk of Court using the CM/ECF system, which will send a notification to the following:

    Susan L. Burke, Esq.
    sburke@burkepllc.com
    Burke PLLC
    1000 Potomac Street, NW
    Suite 150
    Washington, DC 20007
    Telephone:  202-232-5504
    Facsimile:  202-232-5513

    Paula Pugh Newett, Esq.
    USAVAE.ALX.ECF.CIVIL@usdoj.gov
    United States Attorney's Office
    2100 Jamieson Ave
    Alexandria, VA 22314
    Telephone:  703-299-3700

    Monika Moore, Esq.
    USAVAE.ALX.ECF.CIVIL@usdoj.gov
    United States Attorney's Office
    2100 Jamieson Ave
    Alexandria, VA 22314
    Telephone:  703-299-3700

                                                              /s/ David W. O'Brien
                                                                  David W. O'Brien